**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

TAO OF SYSTEMS INTEGRATION, INC.,

       Plaintiff,

   v.                           **CIVIL ACTION NO. 4:03cv67**

ANALYTICAL SERVICES & MATERIALS, INC.,

       Defendant and
       Counterclaim Plaintiff,

DR. JALAIAH UNNAM, and
DR. VENKI S. VENKAT f/k/a DR. SUBBIAH VENKATESWARAN,

       Defendants,

   v.

TAO OF SYSTEMS INTEGRATION, INC., and
DR. SIVA MANGALAM,

       Counterclaim Defendants.

## OPINION AND ORDER

    This matter comes before the court on the parties' filing of bills of costs.  For the reasons set forth below, the court **DENIES** the bills of costs.

### I.  Procedural History[1]

    On May 21, 2003, Tao of Systems Integration, Inc. ("Tao")

---

[1] The Factual History of this case is incorporated by reference to this court's Opinion and Order, issued on January 8, 2004, addressing the parties' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> <u>Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.</u>, Opinion and Order, No. 4:03cv67 at 2-5 (E.D. Va. January 8, 2004).

filed a Complaint alleging four counts of federal and state claims against Analytical Services & Materials, Inc. ("AS&M").[2]  Counts One and Two alleged claims for "reverse passing off" and false advertising in violation of the Lanham Act.  Count Three alleged claims of misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act ("VUTSA").  Count Four alleged a claim of unjust enrichment under Virginia common law.  On June 25, 2003, AS&M filed a counterclaim against Tao and Dr. Siva Mangalam ("Mangalam"), founder of Tao, alleging misappropriation of trade secrets under VUTSA.[3]

On June 25, 2003, AS&M submitted a motion to dismiss Tao's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6).  On August 15, 2003, Tao and Mangalam submitted a motion to dismiss AS&M's counterclaim, pursuant to Rule 12(b)(6).  After all parties submitted their briefs and when the matter was ripe for review, the court issued an Order and Opinion on January 8, 2004.  The court granted AS&M's motion to dismiss Counts One and Four and two of the

---

[2] On January 8, 2004, the court granted Tao's Motion to Amend Complaint to add as defendants Dr. Jalaiah Unnam ("Unnam"), founder of AS&M, and Dr. Subbiah Venkateswaran ("Venkateswaran"), an engineer at AS&M.

[3] The court notes that the counterclaim was filed only on behalf of AS&M, and not on behalf of Unnam and Venkateswaran. However, the fact that Unnam and Venkateswaran did not technically lose a counterclaim does not affect the court's determination that there are no prevailing parties in this case.  See infra note 10.

claims brought in Count Three.[4]   Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., Opinion and Order, No. 4:03cv67 at 24 (E.D. Va. January 8, 2004).  The court denied AS&M's motion to dismiss Count Two and the Count Three claim regarding the TDT flutter test materials.  Id.  The court also denied Tao's motion to dismiss AS&M's counterclaim.  Id.

On July 6, 2004, Tao filed a motion for leave to amend its complaint, seeking to add four new state claims (the "new state claims").[5]   On July 13, 2004, AS&M, Unnam, and Venkateswarran ("Defendants") filed a motion for summary judgment on Count Two and the remaining claim in Count Three.  On the same day, Tao and Mangalam filed a motion for summary judgment on AS&M's counterclaim.  After all briefs were filed and when the matter was ripe for review, the court issued an Order and Opinion on August 11, 2004.  The court granted Defendants' motion for summary judgment on Count Two and denied their motion for summary judgment on Count Three.  Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., Opinion and Order, No. 4:03cv67 at 25 (E.D. Va. August 11, 2004).  However, the court declined to exercise

_____

[4] Count Three alleged claims based on trade secret misappropriation of three items: patents, patent refinements, and Transonic Dynamic Tunnel ("TDT") flutter test materials. The court dismissed the claims alleging misappropriation of patents and patent refinements.

[5] The four new state claims were for breach of contract, fraud in the inducement, fraud, and breach of fiduciary duty.

supplemental jurisdiction over Count Three, dismissed it without prejudice, and denied Tao's motion to amend its complaint as moot. Id. at 25-26.  Finally, the court granted Tao's motion to dismiss AS&M's counterclaim.  Id. at 25.

On August 23, 2004, Defendants filed a bill of costs pursuant to Federal Rule of Civil Procedure 54(d)(1).[6]  On August 27, 2004, Tao submitted an Opposition to Defendants' Bill of Costs and filed its own bill of costs.  Tao contended that the litigation ended with a mixed result, and thus there was no prevailing party entitled to costs.  Tao argued in the alternative that the court should determine which parties won which claims and counterclaim, ascertain which litigation costs align with each specific claim and counterclaim, and then apportion costs by claim to the winning parties.  Tao finally argued that if the court did not deny or apportion costs, then costs should be awarded to Tao as the prevailing party.  On September 8, 2004, Defendants submitted Defendants' Response to Tao's Objections, Objections to Tao's Bill of Costs, and Memorandum of Law in Support of the Foregoing ("Defs.' Resp. to Pl.'s Objs.").  On September 20, 2004, Tao submitted a Response to Defendants' Objections.[7]

---

[6] Rule 54(d)(1) states that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Fed. R. Civ. P. 54(d)(1) (2005).

[7] In its response, Tao made the argument, for the first time, that even if Defendants were the prevailing parties, they should be denied costs due to their bad faith and obstructive conduct.  Pl.'s

At the same time that the parties submitted their bills of costs, they also filed notices of appeal. The court continued disposition of the bills of costs until appellate review was completed. On August 5, 2005, the Court of Appeals for the Fourth Circuit affirmed the court's judgment on the motions for summary judgment. See Tao of Sys. Integration v. Analytical Servs. & Materials, Inc., 141 Fed. Appx. 129, 130 (4th Cir. 2005) (unpublished). The matter of awarding costs is now ripe for review.

## II.  Applicable Law

Rule 54(d)(1) provides that the prevailing party to an action will have its costs, other than attorney fees, reimbursed by the losing party, unless the court decides otherwise. Fed. R. Civ. P. 54(d)(1); see also Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999). "While Rule 54(d)(1) intends [to] award...costs to the prevailing party as a matter of course," Cherry, 186 F.3d at 446, "the trial court exercises considerable discretion" when determining whether to tax costs, Constantino v. S/T Achilles, 580 F.2d 121, 123 (4th Cir. 1978); see also SK Hand Tool Corp. v. Dresser Industries, Inc., 852 F.2d 936, 943 (7th Cir. 1988) ("[D]istrict courts have broad discretion to determine

---

Resp. at 5-9. Because the court disposes of this matter on the ground that there are no prevailing parties, it need not consider the merits of Tao's argument or the fact that Tao first made the argument in a response.

whether and to what extent costs may be awarded."); <u>Roberts v. Madigan</u>, 921 F.2d 1047, 1058 (10th Cir. 1990) (stating that its decision "is based on the broad discretion of the district court"); <u>Manildra Milling Corp. v. Oglivie Mills, Inc.</u>, 76 F.3d 1178, 1183 (Fed. Cir. 1996) (explaining that "the district court judge retains broad discretion as to how much to award, if anything," to the prevailing party). A district court's decision to deny the awarding of costs is reviewed for abuse of discretion. <u>Cherry</u>, 186 F.3d at 446; <u>see</u> <u>also</u> 10 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2668 (2005) ("A discretionary ruling as to costs usually will not be disturbed on appeal, although in extreme cases it may be set aside as an abuse of discretion.").

The district court's discretion typically concerns whether it had good reason to deny costs to a litigant that is deemed the prevailing party. <u>See</u>, <u>e.g.</u>, <u>Cherry</u>, 186 F.3d at 446-48. However, the broad discretion also applies to a determination that neither litigant is the prevailing party in the first instance. <u>See</u>, <u>e.g.</u>, <u>U.S. Search, LLC v. U.S. Search.com, Inc.</u>, 300 F.3d 517, 522 n.4 (4th Cir. 2002) (applying the discretionary standard to a district court's decision as to which litigant was the prevailing party); <u>Testa v. Village of Mundelein</u>, 89 F.3d 443, 447 (7th Cir. 1996) (explaining that district courts have "wide discretion" in cases that have a "mixed outcome"); <u>Johnson v. Nordstrom-Larpenteur Agency, Inc.</u>, 623 F.2d 1279, 1282 (8th Cir. 1980) ("Where each of

the parties has prevailed on one or more of its claims, defense or counterclaims, the district court has broad discretion in taxing costs."); Roberts, 921 F.2d at 1058 (applying its "broad discretion" standard to a district court's decision as to which litigant was the prevailing party).   "In keeping with the discretionary character of the rule, the federal courts are free to pursue a case-by-case approach and to make their decisions on the basis of the circumstances and equities of each case."  10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2668.  A key factor for a court to consider when conducting this inquiry is determining on which claims the litigation costs were actually expended.  See, e.g., Scientific Holding Co., v. Plessey Inc., 510 F.2d 15, 28 (2d Cir. 1974) (deeming defendant the prevailing party when "[l]ittle trial time was spent on [its defeated] counterclaim," but three weeks of trial was spent on plaintiff's losing claims); Roberts, 921 at 1058 (upholding district court's awarding of costs when the decision was based, in part, on what issues were "truly contested at trial"); Dagen v. CFC Group Holdings Ltd., 2004 U.S. Dist. Lexis 6839, *8-9 (S.D.N.Y. 2004) (unpublished) (designating defendants as the prevailing party when, inter alia, "the entire trial was dedicated to plaintiff's case...[and because t]he fact that the defense rested at the close of plaintiff's case shows that the focus of litigating was on plaintiff's allegations as opposed to defendants'").

### III.  Analysis

### A.  This Case Produced No Prevailing Party

The court finds that there is no prevailing party in this case.  Tao started with four counts.  In response to AS&M's 12(b)(6) motion, the court dismissed Counts One and Four and parts of Count Three.  The dismissal was issued before significant discovery had begun and prior to either party incurring substantial litigation costs.  See Defs.' Resp. to Pl.'s Objs. at 4 (stating that after the court ruled on the 12(b)(6) motions, "[i]ntensive discovery ensued").  The bulk of the litigation costs concerned Count Two and Count Three's remaining state claim regarding the TDT flutter test materials, as well as AS&M's counterclaim.  Tao lost on Count Two, defeated AS&M's motion for summary judgment on the TDT flutter claim, and won summary judgment on AS&M's counterclaim.  The court declined to exercise supplemental jurisdiction over the TDT flutter claim, but that matter is still actionable in state court,[8] as are the new state claims that Tao sought to add to its Complaint prior to the court's ruling on the motions for summary judgment.  From AS&M's perspective, it won on Counts One, Four, and parts of Three, but it did not have to expend significant

---

[8] Defendants deride the still actionable TDT flutter claim as an insignificant suit.  Defs.' Resp. to Pl.'s Objs. at 4 and 10 (referring to Tao's remaining claim as a "sliver" of a claim and a "shred" of a claim).  However, Defendants offered no evidence, exhibits, arguments, or reasoning upon which the court could conclude that this claim is trivial.  Defendants' contention thus amounts to nothing more than self-serving, conclusory statements.

litigation resources to do so.  Then, after extensive discovery, AS&M won on Count Two, lost its counterclaim, and still is subject to suit over the TDT flutter test materials and any new state claims.

Thus, with respect to the actions which incurred most of the litigation costs, each party prevailed in its defense of a claim, ensuring that it will not be subjected to liability and monetary damages; each party lost a claim to hold the other party liable; and Tao still has a state claim that is actionable.  When the court considers the claims which produced few litigation costs, AS&M won the 12(b)(6) motion on Counts One and Four and parts of Count Three, but still is subject to four new state claims.[9]

---

[9] Defendants disparaged Tao's new state claims as "eleventh-hour efforts," Defs.' Resp. to Pl.'s Objs. at 10, added "[o]n the eve of the summary judgment briefing," id. at 4. This court's task is to conduct a "case-by-case" inquiry that examines all of "the circumstances and equities of each case." See 10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2668.  In fact, Defendants themselves stated that "[t]he determination of which party 'prevailed' in this action is one that is to be made with reference to the case as a whole....The present case must be measured by the totality of the decisions rendered by the Court." Defs.' Resp. to Pl.'s Objs. at 9-10.   Yet, Defendants have given the court absolutely no reason to consider the new state claims – which were dismissed without prejudice for mootness – any differently from the claims dismissed during the 12(b)(6) ruling.  None of these claims produced significant discovery costs by Defendants' own admission, see id. at 4, while all of them presumably created at least minimal litigation planning costs and a round of briefing.  Thus, the court uses its discretion and its intimate knowledge of this case's proceedings to treat these claims similarly.

Even if, as Defendants wish, the court considered the claims that were dismissed by the 12(b)(6) ruling, but did not take into account the four new state claims, it would still find that there is no prevailing party.   The litigation costs predominantly

Clearly, this case produced a mixed outcome and there is no prevailing party.[10]  Yet, Defendants still assert that they are the

_____

concerned Count Two, part of Count Three, and the counterclaim. Each party won substantially in defending itself against liability, and each party lost in failing to impose liability.  While two counts and parts of one count were dismissed by the 12(b)(6) ruling, there were not significant costs pertaining to those claims.  Yet, the Count Three claim regarding the TDT flutter test materials is still actionable against AS&M, and that claim did incur litigation costs in this court.

Such an outcome is clearly a mixed result with no overall prevailing party.  Even "[i]f the loaf was not evenly divided,...each side won a substantial victory...and [a] Court's order that each stand its costs [is] well within its discretion." Allen v. Standard Crankshaft & Hydraulic Co., 323 F.2d 29, 36 (4th Cir. 1963).

[10] The counterclaim in this case was filed only in AS&M's name, and not on behalf of Unnam and Venkateswaran.  Therefore, Unnam and Venkateswaran defeated all of Tao's claims except for the TDT flutter claim, and did not lose any counterclaim.  Hence, Unnam and Venkateswaran arguably could be prevailing parties even if AS&M is not.

However, Defendants never contended that Unnam and Venkateswaran should be treated differently from AS&M.  Even if they had, though, it would not change the court's analysis.  Under circumstances such as these, when "litigation expenses were jointly incurred by a prevailing defendant and a losing defendant [and they] were jointly represented, it is...reasonable to deny costs to the prevailing defendant." McKenna v. Ferreira, 1996 U.S. Dist. LEXIS 17935, *7 (E.D. Pa. 1996) (unpublished); see also All W. Supply Co. v. Hill's Pet Prods. Div., 153 F.R.D. 667, 669 (D. Kan. 1994); Sheehy v. Town of Plymouth, 2001 U.S. Dist. LEXIS 993, *15 (D. Mass. 2001) (unpublished) (quoting McKenna, 1996 U.S. Dist. LEXIS 17935 at *6-7, and All. W. Supply Co., 153 F.R.D. at 669). In fact, Defendants' briefs regularly interchange references to AS&M with references to Defendants, without ever distinguishing AS&M's interests from Unnam's and Venkateswaran's interests.  See Defs.' Resp. to Pl.'s Objs. at 7-14.  At certain points, Defendants even refer to "Defendants' purely defensive counterclaim" and "Defendants' counterclaim." Defs.' Resp. to Pl.'s Objs. at 11 and 12 (emphasis added).  Therefore, the court treats their interests, including in the outcome of the counterclaim, identically.  The court's conclusion is made all the stronger by the fact that, under Federal Rule of Civil Procedure 13(a), Unnam and Venkateswaran are

prevailing party.  Their arguments, addressed below, are meritless.

## B.  Defendants' Counterclaim Was Not "Purely Defensive"

Defendants state that the counterclaim was a "purely defensive counterclaim" and was "defensive in nature."  Defs.' Resp. to Pl.'s Objs. at 11.  The starting point for this argument is the fact that Tao's Complaint was based on the allegation that, in 1995, AS&M submitted to NASA a proposal for an Engineering and Technical Services contract ("ETS Proposal").  Pl.'s Compl. at 6, ¶ 24.  Tao alleged that the ETS Proposal contained proprietary information belonging to Tao.  Id. at 6-9, ¶¶ 25-32.  Tao also alleged that it did not know about the use of that information in the ETS Proposal until 2001, when Tao received the proposal after "a third party, by chance, provided [Tao] with a copy of the ETS Proposal."  Id. at 11, ¶ 40.  Defendants contend that Tao's May 21, 2003, Complaint would have been time-barred, unless Tao could claim that it did not know, and should not have known, about the information in the ETS Proposal until shortly before 2003.  Defs.' Resp. to Pl.'s Objs. at 13.  Thus, Defendants argue, Tao had to allege that it accidentally received the ETS Proposal in 2001 in order to ensure that its claims were actionable.  Id. at 12-13.  Defendants claim that they sought to prove that Tao in fact had possession of the ETS Proposal

likely barred from bringing a claim that Tao misappropriated trade secrets that were the subject of Tao's action.  See Fed. R. Civ. Pro. 13(a) (stating the rule for compulsory counterclaims).  Hence, Unnam and Venkateswaran have "lost" the opportunity of protecting their interests from any alleged misappropriation.

prior to 2001 by intentionally misappropriating the ETS Proposal, as opposed to receiving it "by chance." <u>Id.</u>  Hence, the counterclaim is merely an extension of Defendants' statute-of-limitations defense. <u>Id.</u> at 13.

There are numerous problems with Defendants' argument. First, they never cited any statute or law that demonstrates that Tao's claims would have been time-barred absent the allegation that it received the ETS Proposal by accident in 2001.  More tellingly, Defendants never made an argument, either in their 12(b)(6) or summary judgment motions, that Tao's claims were time-barred.[11]

---

[11] AS&M did assert as an affirmative defense, in its Answer, that "Tao's claim are barred by applicable limitations periods and/or laches." AS&M Answer at 12, ¶ C.  Yet, AS&M never developed such a defense in its motions.  Presumably, a 12(b)(6) motion would not have been the proper place for arguing that Tao's allegation is false, since all of a plaintiff's allegations must be assumed true when entertaining such a motion.  <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).  However, AS&M's summary judgment motion never set forth a time-bar argument and never indicated that any discovery was developed with respect to such a defense.

Count Four of Tao's Complaint was dismissed, in part, because the statute of limitations had expired for bringing an unjust enrichment claim.  However, Defendants actually never made this argument.  Rather, it was raised by the court <u>sua</u> <u>sponte</u> because the face of the Complaint clearly revealed the statute-of-limitations defense.  <u>See</u> <u>Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.</u>, Opinion and Order, No. 4:03cv67 at 7 and 21-22 (E.D. Va. January 8, 2004).  Moreover, any factual development with respect to how Tao obtained the proposal would have been irrelevant to a time-bar defense to the unjust enrichment claim.  The statute of limitations began to run on Tao's claim at the point that the unjust enrichment occurred, not when Tao knew or should have known of the unjust enrichment.  <u>See</u> <u>id.</u> at 21-22 (internal citations omitted).  Thus, it did not matter whether Tao received the ETS Proposal in 2001, or if it obtained it earlier and thus knew or should have known of the unjust enrichment prior to 2001.  Finally, Count Four was dismissed in the 12(b)(6)

Defendants also did not cite any exhibits, depositions, or evidence that the parties developed regarding Tao's allegation, and thus failed to demonstrate that Tao's allegation created a crucial issue.  Consequently, Defendants have given the court no basis for finding that their contentions are anything other than self-serving, conclusory statements.

The notion that the counterclaim was "purely defensive" also is belied by the language of the counterclaim itself and the briefs AS&M submitted in support of the counterclaim.  The counterclaim asserts that "AS&M has been damaged by Tao's and Dr. Mangalam's willful and malicious misappropriation of the ETS Proposal."  AS&M's Counterclaim at 6, ¶ 30.  AS&M explained that it will "continue to be damaged if Tao and Dr. Mangalam are allowed to continue using the ETS Proposal...to prepare future proposals and also to prosecute the Complaint against AS&M."  Id.  AS&M specifically explained that losing its counterclaim would harm it by allowing Tao and Mangalam to "gain competitive advantage over AS&M in the rebid process."  AS&M Brief in Opposition to 12(b)(6) Mot. to Dismiss Counterclaim at 4.  AS&M added that Mangalam "and Tao are indebted to AS&M as set forth in the Counterclaim."  Id. at 11.  AS&M's detailed specification of how Tao harmed it reveals that it did not merely assert a defense to Tao's claims, but also

---

ruling without any discovery or factual development of the time-bar defense.

that it has been, and will continue to be, damaged by Tao's alleged
conduct and thus must be remedied for such harm.  Consequently,
AS&M sought compensatory damages and $350,000 in punitive damages,
AS&M's Counterclaim at 7, hoping that the court would "look
favorably upon [AS&M's] attempts to protect its trade secrets by
<u>punishing</u> those responsible for misappropriating" the ETS Proposal,
AS&M Brief in Opposition to 12(b)(6) Mot. to Dismiss Counterclaim
at 7 (emphasis added).  Moreover, AS&M prayed for an injunction to
prevent Tao and Mangalam from using the ETS Proposal in the future.
AS&M's Counterclaim at 7.   Hence, AS&M sought affirmative
protection from Tao's and Mangalam's conduct.  Attempts to impose
an injunction prohibiting specified conduct, as well as to win
"punishing" damages, are offensive measures, not mere defensive
acts.  Thus, the court finds that AS&M vigorously prosecuted its
counterclaim to obtain an injunction and damages.  Defendants, now
seeking costs after losing their counterclaim, merely offer a post-
hoc rationalization that the counterclaim was actually only
defensive.[12]

---

[12] An instructive case for Defendants is <u>Terry Properties, Inc.
v. Standard Oil Co.</u>, 799 F.2d 1523 (11th Cir. 1986).  There, the
Eleventh Circuit upheld a district court's decision to award costs
to the defendants even though they lost their counterclaim.  <u>Id.</u> at
1540.   The plaintiffs' claims in the case were "frivolous 'from
their inception.'" <u>Id.</u> at 1533.  The defendant's counterclaim was
merely a "reasonable effort to forestall the [plaintiffs']
continued harassment of the counterclaimants" and an attempt to
"cut[] short the [plaintiffs'] aggressive tactics." <u>Id.</u> at 1540.
Hence, the defendants demonstrated how they truly acted out of
self-defense.  AS&M has provided no arguments, facts, or evidence

## C.  Case Law Cited by Defendants Does Not Bolster Position

Defendants next turn to case law that, they contend, requires the court to find that they are the prevailing parties.  However, these cases do not bolster their position.  Defendants first cite Scientific Holding Co., Ltd. v. Plessy, Inc., 510 F.2d 15 (2d Cir. 1974), for the proposition that

> "District courts have held that a defendant who successfully fends off a large claim may be awarded costs despite failure to prevail on a counterclaim...." [These decisions] reject[] precisely the result Tao seeks here – denying the successful defendant the status of a "prevailing party merely because it lost on its counterclaim" – as "too wooden a view."

Defs.' Resp. to Pl.'s Objs. at 11 (quoting Scientific Holding Co., 510 F.2d at 28).  However, Defendants misinterpret this case and the holding of the Second Circuit.  The appellate court did not hold that a district court must award costs, although a defendant loses a counterclaim, or that it must award costs under certain circumstances.  Nor did it express that the district court would have abused its discretion if it denied costs to Plessy, Inc. Rather, the Second Circuit merely found that the district court did not abuse its discretion by awarding costs to Plessy, Inc. Scientific Holding Co., 510 F.2d at 28.  Moreover, the circumstances of this case at bar are clearly distinguishable from Scientific Holding, regardless of what was the appellate court's

_____

upon which this court could conclude that AS&M was protecting itself in such a defensive manner.

holding.   The Second Circuit explained that "[l]ittle trial time was spent on the counterclaim, [but] consideration of plaintiff's claim...required three weeks of trial, 16 witnesses, over 1,800 pages of testimony and more than 100 exhibits." Id.   Thus, the court specifically detailed how the overwhelming amount of trial time, and thus the brunt of the litigation costs, focused on the plaintiff's claim.   Defendants here have completely failed to show how the factual development, depositions, witnesses, exhibits, and other evidentiary materials focused on Tao's claim as opposed to the counterclaim, and thus why they are the prevailing party.

Defendants also rely on City of Rome v. Glanton, 184 F.R.D. 547 (E.D. Pa. 1999).[13]   City of Rome is one of a small number of cases from the United States District Court for the Eastern District of Pennsylvania which proffer two principles for determining that a defendant is the prevailing party: first, if a defendant loses a counterclaim, then it should still be awarded costs, if the counterclaim involves the same legal and factual issues as the claim, and thus does not require proof of facts outside of the plaintiff's claim; and second, a defendant that loses its counterclaim is still the prevailing party, if the plaintiff sought damages dwarfing a small counterclaim.   See id. at

---

[13] City of Rome was initially cited by Tao.   See Pl.'s Opp. to Defs.' Bill of Costs at 5.   However, Defendants expanded the discussion of the case to attempt to use it to their advantage. See Defs.' Resp. to Pl.'s Objs. at 11-14.

550-52; see also Lacovara v. Merrill Lynch, 102 F.R.D. 959, 961
(E.D. Pa. 1984); Hubner v. Schoonmaker, 1993 U.S. Dist. LEXIS 9761,
*13-16 (E.D. Pa. 1993) (unpublished).   These cases are not
precedential authority for this court, and they have never been
cited by the Court of Appeals for the Fourth Circuit, or any
district court in the Fourth Circuit.   In fact, these cases, the
first of which was issued in 1984, have been cited only twice by
district courts outside of the Third Circuit, and only once by the
Court of Appeals for the Third Circuit itself, and that in an
unpublished opinion.   See Tyler v. O'Neill, 112 Fed. Appx. 158,
162-63 (3d Cir. 2004) (unpublished); Dagen v. CFC Group Holdings,
Ltd., 2004 U.S. Dist. LEXIS 6839, *7 (S.D.N.Y. 2004) (unpublished);
Sage Prods. v. Devon Indus., 45 U.S.P.Q.2d 1692, 1695 (C.D. Cal.
1997).   Most importantly, City of Rome contradicts the overwhelming
number of cases, particularly appellate cases, that confer broad
discretion on a district court to determine which litigant is the
prevailing party.   See supra at 5-7.   These cases do not cabin that
authority in the manner that City of Rome has done.   Rather, that
discretion permits a district court to conduct a case-specific
inquiry and to look at all of "the circumstances and equities of
[the] case."   10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE §
2668.   It is true that determining which claims incurred the most
litigation costs is a relevant factor in this analysis.   See supra
at 7.   However, that issue is but one factor for the court to

17

consider out of all the circumstances surrounding the case. Moreover, City of Rome discusses a situation in which a defendant merely loses a counterclaim on which the parties expended few costs. City of Rome, 184 F.R.D. at 150. Such a scenario is quite different from circumstances like this one, in which both parties incurred significant costs in order to develop facts that pertain as much to a vigorously prosecuted counterclaim as to the initial claim. Under the latter situation, it is reasonable to deem neither litigant as the prevailing party.

Therefore, this court finds that City of Rome is incorrect and inapplicable to this matter. However, even under City of Rome, Defendants' position is weak. Defendants' argument turns on its contention, previously discussed, see supra at 11-14, that its counterclaim was nothing more than a response to Tao's allegation that it received the ETS Proposal in 2001 by chance. Defs.' Resp. to Pl.'s Objs. at 12-13. Defendants assert that irrespective of AS&M's counterclaim, the parties were forced to develop these facts to address a time-bar defense. Id. Defendants go so far as to say that the counterclaim "would never have been filed but for the allegations of the Complaint." Id. at 14.

As before, the court finds this argument highly unpersuasive. Defendants clearly fail to concretely support their reasoning, demonstrating that their statements are merely self-serving, conclusory assertions. Defendants cite no statute, cases, or law

18

that indicates that Tao's claims would have been time-barred without this allegation. Furthermore, Defendants never brought a time-bar defense at any point in the case. It is an incredulous proposition that the counterclaim was merely treading the same ground as a time-bar defense, when AS&M brings the counterclaim, but Defendants did not make a statute-of-limitations argument, even though that defense would have completely precluded liability. Defendants also cited no exhibits, depositions, or evidence that the parties developed with respect to Tao's allegation, and hence did not show that these facts would have been developed absent Defendants' counterclaim.[14]  To the contrary, the record demonstrates that AS&M vigorously prosecuted its counterclaim in order to enjoin Tao from using the ETS Proposal and to "punish[]" Tao for allegedly misappropriating AS&M's trade secrets. See supra at 13-14. AS&M thus had the incentive to produce litigation costs in the prosecution of its counterclaim, belying the notion that it

_____

[14] A relevant case, as far as any City of Rome analysis goes, is Dagen v. CFC Groups Holdings, Ltd., 2004 U.S. Dist. LEXIS 6839 (S.D.N.Y. 2004) (unpublished), one of only two cases outside of the Third Circuit that cites City of Rome.  In Dagen, the district court awarded costs to defendants even though they lost their counterclaims because "the entire [four-day] trial was dedicated to plaintiff's case." Id. at *8.  The court painstakingly detailed the specific issues litigated and explained how those issues went to the plaintiff's claim, not the defendants'. Id. at *8-9.  In this matter, Defendants never discuss what specific issues were inquired into during discovery, other than pointing to the generalized matter of how Tao came to possess the ETS Proposal. Nor do they explain how much evidence was developed with respect to those issues.

would have never filed its Counterclaim if Tao had not filed its Complaint.   Consequently, Defendants have not shown that Tao's allegation was the primary cause for producing the costs associated with how Tao came into possession of the ETS Proposal.

Finally, Defendants argue that damages sought by Tao dwarfed damages sought by AS&M, and since Defendants defeated a greater liability, Defendants are the prevailing party.[15]   Defs.' Resp. to Pl.'s Objs. at 14.   Defendants infer that Tao inflated the damages alleged by AS&M at $1,828,000, see id., while completely ignoring that Tao specifically cited a letter from AS&M's own attorney stating that AS&M was seeking at least that much, see Pl.'s Opp. to Defs.' Bill of Costs at 4 (citing Ex. 2).   AS&M points to no evidence indicating that the damages were any lower.   AS&M also contends that because Tao sought treble damages for violations of the Lanham Act, see Pl.'s Complaint at 13, ¶ 49, Tao in fact sought $8,400,000 ($2,800,000 times three).   Defs.' Resp. to Pl.'s Objs. at 14.   AS&M further asserts that based on Tao's other claims, including those dismissed in the 12(b)(6) ruling, it sought damages

_____

[15] Tao was the first to compare the amount of damages the parties sought.   Pl.'s Opp. to Defs.' Bill of Costs at 4-5.   Tao cited a July 11, 2004, letter from George H. Bowles, attorney for AS&M, to Karl S. Kravitz, attorney for Tao, in which Bowles stated that AS&M sought $1,828,000 in addition to damages it previously cited.   Id. at 4 (citing Ex. 2).   Tao stated that it sought $2,800,000, the present value of AS&M's profits on its ETS Contracts.   Id. at 4-5.   Thus, the size of damages was roughly equal, and there was no prevailing party since both sides lost. Id.

in excess of $10,000,000.   Id.

City of Rome, however, referred to situations in which a "complaint dwarfed the significance of a small counterclaim." City of Rome, 184 F.R.D. at 550 (emphasis added).[16]   Regardless of the relative sizes of the claims and counterclaim, AS&M sought approximately $2,000,000, a significant sum of money that is not "small."   Moreover, AS&M ignores the fact that, in addition to damages, it also requested an injunction, which is significant relief in and of itself.   Therefore, AS&M fails to demonstrate that it is entitled to prevailing party status based on a comparison of the size of the claim as opposed to the size of the counterclaim.

## IV.  Conclusion

For the reasons set forth above, the court **DENIES** the parties' bills of costs.   There is no prevailing party in this case.   The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for plaintiff, defendants, and counterclaim defendants.

**IT IS SO ORDERED.**


_____                     _____/s/_____
                                            REBECCA BEACH SMITH
Norfolk, Virginia
_____

January 23, 2006

---

[16] Also relevant is Lacovara v. Merrill Lynch, 102 F.R.D. 959 (E.D. Pa. 1984).  In that case, the court deemed the defendant the prevailing party despite losing its counterclaim because the defendant sought only $4,494, id. at 961, one-sixteenth of what the plaintiff hoped to win.  AS&M's counterclaim was for approximately $2,000,000 and was at least one-fifth of what Tao asked for.